**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CARMEN A. VIVES

        Plaintiff,

   v.

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, JOSEPH
PONTE, GREGORY McLAUGHLIN, and
SANDRA LOWE,

        Defendants.

---

15 CV 6127(MKB)(RER)

**AMENDED COMPLAINT**
(Jury trial demanded)

---

   Plaintiff Carmen A. Vives ("Vives"), by her undersigned counsel Mark Risk

P.C., and Josh Bernstein P.C., for her Complaint against Defendants the City of New

York ("the City"), New York City Department of Correction ("Correction Department")

Joseph Ponte ("Ponte"), Gregory McLaughlin ("McLaughlin"), and Sandra Lowe

("Lowe"), (collectively "Defendants") alleges as follows.

   1.   Vives had served as a New York City Correction Officer for 25 years

when she fractured her wrist and tore the ulnar collateral ligament in her thumb. Despite

the existence of a written light duty program for correction officers seeking to return from

medical leave, Defendants simply refused to discuss any accommodation that would

allow her to return to work.  When they finally permitted her to return -- nine months

later --  Defendants initiated proceedings to terminate her -- on the grounds of excessive

absenteeism.

2.     Vives brings this action under the Americans with Disabilities Act ("ADA"), 42 USC § 12101 *et. seq.;* the Family and Medical Leave Act ("FMLA"), 29 USC § 2601 Ms. Vives *et. seq.;* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*

3.     In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of this action.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction pursuant to 28 USC § 1331.

5.     Venue is proper in this district pursuant to 28 USC 1391(b)(1), in that Defendant City of New York resides in this district.

6.     Vives timely commenced this action by filing her complaint in this Court within ninety days 90 after her receipt of a Notice of Suit Rights issued on or about July 27, 2015 by the U.S. Equal Employment Opportunity Commission.

## The Parties

7.     Vives is a 54 year old Hispanic female resident of the city and state of New York residing in the Borough of Queens.

8.     Defendant the City of New York is the municipal entity liable for the conduct of the New York City Correction Department.

9.     Defendant Ponte has been the Commissioner of the New York City Correction Department since April 2014, residing upon information and belief in the City and State of New York.

10.     At all times relevant hereto, Defendant McLaughlin was the warden for the Corrections Department's Support Services Division, and later the bureau chief of its Rikers Island facility, residing upon information and belief in the City and State of New York.

11.     Defendant Sandra Lowe, was at all times relevant hereto, a medical assistant with the Health Management Division of the Correction Department, residing upon information and belief in the City and State of New York.

### Background and Facts

12.     After passing the New York City Civil Service Examination, undergoing a background check, and completing training at the Department of Correction Academy including firearms training, Ms. Vives began her tenure as a Correction Officer on Rikers Island on July 2, 1987.

13.     From 1987 until her termination in 2014, she worked as a correction officer, and has completed annual training including firearms recertification at the Correction Department's Training Academy and Firearms Range.

14.     The firearms certification has at all times required that Vives achieve proficiency in shooting with both her left and right hands.

15.     By the time of her termination in 2014, Vives had completed over 27 years of service in the Correction Department, performing in a wide variety of capacities involving both inmate oversight and administrative work, working in a variety of settings at the Rikers Island facilities operated by the Correction Department, and at Correction Department headquarters in Manhattan.

16.     At the time of her termination in 2014, Vives was working on a team of about five officers running the industrial size laundry at the Rikers Island facility, including overseeing a group of inmates who laundered bed clothes, towels, and uniforms for the Correction Department and other city agencies.

17.     The corrections officers who worked in the laundry did not carry firearms.

18.     At the time of her termination after a 27 year career as described below, Vives was earning annual compensation including overtime wages of approximately $100,000, plus health insurance and pension benefits.

**Vives Injures Her Hand**

19.     On May 25, 2012, Vives suffered an accident while off duty and away from the workplace, fracturing her right wrist and tearing the ulnar collateral ligament in her right thumb.

20.     Vives's injury limited her ability to, among other things care for herself, perform manual tasks and lift heavy objects.

21.     Per Correction Department policy, Vives promptly reported her injury to the Department's Health Management Division, which assigned Defendant Lowe, a medical assistant, to meet with Vives periodically to determine whether she was ready to return to work in either a full or limited capacity.

22.     Shortly after her injury, Vives' surgeon furnished paperwork to the Correction Department indicating that Vives had suffered a scaphoid fracture of her right wrist and a ulnar collateral ligament tear of her right thumb, that surgery had been

scheduled, and that Vives should engage in "no lifting, carrying, pulling, push-up etc." with her right hand and arm.

23.     Vives underwent surgery to repair her thumb on June 6, 2012.

24.     Correction Department policy provided that Vives would be paid her regular salary while away, but also required that she stay inside her home at least 20 hours per day, seven days per week while on medical leave of absence.

25.     The restrictions placed on Vives' movement by the Correction Department policy added to her incentive to return to work at the earliest possible date.

**Defendant Refuses to Provide Any Accommodation**

26.     The Correction Department has a program to facilitate the return of injured employees to work under three "medically monitored returned" classifications, under which the Correction Department acts affirmatively to return correction officers to work, with restrictions on their work activities.

27.     One purpose of the program is to reduce absenteeism by facilitating the return of injured correction officers to work with certain restrictions on their activities, thereby reducing the need to pay premium overtime compensation to full duty officers.

28.     Employees returning to work under the "medically monitored 3" classification may not have any inmate contact and may not do heavy lifting.

29.     Employees returning to work under the "medically monitored 2" may work a normal tour without strenuous physical activity, and can supervise inmates accompanied by another officer.

30.     Employees returning to work under the "medically monitored 1" classification have only overtime and tour restrictions.

31.     Vives met with Lowe every two to three weeks for many months, each time requesting that she be permitted to return to work.

32.     Each time Lowe adamantly refused to discuss with Vives the possibility that she could return to work, sometimes dismissively replying "Absolutely Not!"

33.     Though limited in the use of her right hand and wrist, Vives was throughout the period able to write and perform other tasks with her left hand, do clerical work, and press buttons, oversee inmates, and perform many other tasks performed by correction officers.

34.     Though other Correction Department employees were permitted to return to work following more serious injuries under the "medical monitored" program, Lowe continued to deny such opportunity to Vives, month after month.

35.     In a or about 2009, a white male corrections officer named Mr. Reph was permitted to return to work with medically monitored returned status while wearing a full cast on his arm.

36.     In or about 2014, Michael Delzano, a white male officer, was returned to work in a medically monitored returned status with a full cast on his arm following a broken hand and elbow.

37.     During the period that the Correction Department was prohibiting Vives from returning to work under the medically monitored program, it required that she turn in her personal firearms, which had not been done to other correction officers on medical leave.

38.     Upon information and belief, during the period that Defendants were prohibiting her from returning to work under the medically monitored program, Defendant McLaughlin began preparing the paperwork required to terminate Vives.

39.     Finally, on February 28, 2013, Vives was permitted to return to her job at full duty status, which she did as of March 1, 2013.

40.     Shortly after returning to work, Vives took her yearly firearms training at the Correction Department's Training Academy and Firearms Range and passed and qualified in all respects.

41.     Because of Defendants refusal to attempt to provide reasonable accommodation for Vives' condition, she was confined to her home and denied the opportunity to work for a total of about nine months, during which period the Defendant City of New York was denied the benefit of her services.

**Defendants Fire Vives for Excessive Absenteeism**

42.     On May 8, 2013, about two months after Vives returned to work, the Correction Department commenced a disciplinary proceeding against her, seeking to terminate her employment for excessive absence, specifically related to the period of her hand injury.

43.     Under civil service procedure, the Correction Department could not terminate Vives until after a hearing before an administrative law judge at the New York City Office of Administrative Tribunals and Hearings ("OATH").

44.     By decision of April 17, 2014, the Administrative Law Judge recommended that Vives should be terminated for violation of a Correction Department

7

policy that subjects to termination employees who have been absent for 40 days or more, on account of her absences between May 2012 and March 2013.

45.     Numerous male, non-Hispanic men were permitted to return to work and were not subjected to termination for violating the 40-day policy while out on medical leave, including Richard Saverese, Robert Stanlaski, Michael Korbel, Loiuis Cretella, and Roy Wayson.

46.     The only reason that Vives had accumulated absences in excess of 40 days was that the Correction Department declined to make reasonable accomodations to her condition and/or to permit her to return to work, including under its "medically monitored" program.

47.     By letter of September 9, 2014 Defendant Ponte terminated Vives.

### First Cause of Action Against Defendant City of New York
### (ADA – Failure to Accomodate)

48.     Vives incorporates by reference the preceding paragraphs of this Complaint.

49.     At all times material hereto, Plaintiff was a qualified individual with a "disability" within the meaning of the ADA, as amended, as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that she had a physical impairment that limits one or more of her major life activities, had a record of such impairment, and/or was perceived and regarded by the Correction Department as having such an impairment, and that she was capable of performing the essential functions of her job with a reasonable accommodation.  Vives was substantially limited in major life activities including caring for herself, performing manual tasks, and lifting.

8

50.     Vives advised the Correction Department of her ability to return to work with the reasonable accommodation of modified duties that would limit her use of her right hand and wrist.

51.     The Correction Department failed to engage in an interactive process with Vives and failed to provide a reasonable accommodation, and prohibited her from returning to work.

52.     The Correction Department terminated Vives for being absent from work during the period in which she was ready, willing and able to return to work but had been prohibited from doing so by the Correction Department.

53.     As a result of the Correction Department's violation of the ADA, Vives has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and punitive damages on the grounds that the Correction Department's actions were intentional, malicious, and without justification or excuse.

**WHEREFORE**, Vives respectfully requests judgment in her favor and against Defendant City of New York for reinstatement to her position, compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just and proper.

### Second Cause of Action Against Defendant City of New York
### (ADA --Adverse Employment Action)

54.     Vives incorporates by reference the preceding paragraphs of this Complaint.

55.     At all times relevant hereto, Vives was a qualified individual with a "disability" within the meaning of the ADA, as amended as defined at 42 U.S.C. §

12102(2), 29 C.F.R. § 1630.2(g), in that she had a physical or mental impairment that limited one or more of her major life activities, had a record of such impairment, and/or was perceived and regarded by the Correction Department as having such an impairment. Vives was substantially limited in major life activities including caring for herself, performing manual tasks, and lifting.

56.     Vives was fully capable of performing the job of a correction officer as she had for 27 years.

57.     Vives was subject to adverse employment action, first suspension and then termination, because of her disability.

58.     The Correction Department's deliberate discrimination and harassment of Vives including but not limited to terminating her employment because of her disability, her record of disability and/or her perceived disability is unlawful discrimination and is in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et. seq.  This conduct has caused Vives to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

59.     As a result of the Correction Department's violation of the ADA, Vives has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages.  Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and punitive damages on the grounds that the Correction Department's actions were intentional, malicious, and without justification or excuse.

**WHEREFORE**, Plaintiff Carmen Vives respectfully requests judgment in her favor and against Defendant City of New York for reinstatement to her position, compensatory and punitive damages, plus costs of this action, reimbursement of back pay

with interest, front pay, attorneys fees, and such other relief as the Court may deem just and proper.

### Third Cause of Action Against All Defendants
### (Interference With FMLA Rights)

60.     Vives incorporates by reference the preceding paragraphs of this Complaint.

61.     The Family Medical Leave Act 29 U.S.C. § 2615(a)(2)("FMLA") makes it unlawful for an employer to interfere with an employee's right to take a leave of absence under the FMLA.

62.     The Family Medical Leave Act 29 U.S.C. § 2615(a)(2)("FMLA") makes it unlawful for an employer to retaliate against an employee because the employee has taken or sought a leave under the FMLA.

63.     Vives was subjected to adverse action in that her employment was terminated because she took a medical leave of absence to which she was entitled under the FMLA.

64.     Defendants' actions in prohibiting Vives from returning to work, and then terminating her, for being on medical leave of absence was intended to interfere with Vives' right to take medical leave.

65.     The Correction Department policy prohibiting medical leave in excess of 40 days violates the FMLA.

66.     Defendants City of New York and Lowe forced Vives to violate their 40 day rule by prohibiting her from returning to work for nine months.

67.     Defendants Ponte, McLaughlin and Lowe, acted in the interest of their employer the Defendant City of New York, Correction Department, with regard to the

11

actions she took concerning Vives.  Defendants Ponte, McLaughlin and Lowe were each
in whole or in part responsible for Vives's termination in violation of the Family Medical
Leave Act, 29 U.S.C. § 2601, et seq.

68.     Defendants' deliberate retaliation and interference is a violation of the
Family Medical Leave Act, 29 U.S.C. § 2601, et seq.  This conduct has caused Vives to
suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem,
personal humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Carmen Vives respectfully requests judgment in her
favor and against all Defendants, in their joint and several capacities, for compensatory
and punitive damages, plus costs of this action, reimbursement of back pay with interest,
front pay, double damages, attorneys fees, and such other relief as the Court may deem
just and proper.

## Fourth Cause of Action Against Defendant City of New York
### (Gender Discrimination under Title VII)

69.     Vives incorporates by reference the preceding paragraphs of this
Complaint.

70.     Vives is a Hispanic female protected by law against employment
discrimination.

71.     Vives was qualified for the position of correction officer, and was able to
perform her job but for the Correction Department's unlawful actions.

72.     The Correction Department's refusal to permit Vives to return to work
under its own policies, and termination of her employment based on absences from work
that it required, constitutes disparate treatment based on her gender and her race/ethnicity.

12

73.     The Correction Department's termination of Vives was based on her gender and/or her race/ethnicity.

74.     The aforesaid actions of the Correction Department constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

75.     As a result of the Correction Department's violation of Title VII, Vives has suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other compensatory damages. Plaintiff is also entitled to and demands attorney's fees, costs, interest and punitive damages on the ground that the Correction Department's actions were intentional, malicious, and without justification or excuse.

**WHEREFORE,** Plaintiff Carmen Vives respectfully requests judgment in her favor and against Defendant City of New York for reinstatement to her position, compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys fees, and such other relief as the Court may deem just and proper.


### Fifth Cause of Action Against Defendant City of New York
### (Racial/Ethnic Discrimination under Title VII)

76.     Vives incorporates by reference the preceding paragraphs of this Complaint.

77.     Vives is a Hispanic female protected by law against employment discrimination.

78.     Vives was at all times relevant qualified for the position of correction officer, and was able to perform her job but for the Correction Department's unlawful actions.

13

79.     The Correction Department's refusal to permit Vives to return to work under its own policies, and termination of her employment based on absences from work that it required, constitutes disparate treatment based on her race/ethnicity and/or her gender.

80.     Vives was terminated based on her race/ethnicity and/or her gender.

81.     The aforesaid actions of the Defendant City of New York  constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

82.     As a result of Defendants' violation of Title VII, Vives has suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other compensatory damages. Vives is also entitled to and demands attorney's fees, costs, interest and punitive damages, on the grounds that the Correction Department's actions were intentional, malicious, and without justification or excuse.

**WHEREFORE**, Plaintiff Carmen Vives respectfully requests judgment in her favor and against Defendant City of New York for reinstatement to her position, compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys fees, and such other relief as the Court may deem just and proper.


Dated: July 6, 2016

MARK RISK, P.C.                              JOSH BERNSTEIN, P.C.
*Co-Counsel for Plaintiff*                      *Co-Counsel for Plaintiff*

By:_____/s/_____              By:_____/s/_____
              Mark Risk                                        Josh Bernstein
60 East 42nd Street, 47th Fl.                    175 Varick Street
New York, NY 10165                          New York, NY 10014
(212) 682-4100                                   (646) 308-1515
mdr@mrisklaw.com                            jbernstein@jbernsteinpc.com